UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| **EVONNE VALLIANT** | ) |
| Plaintiff, | ) |
| v. | ) |
| **CARUTHERSVILLE HOUSING AUTHORITY**, a municipal corporation; **ELIZABETH HIGHTOWER**, in her official capacity executive director of the Caruthersville Housing Authority, | ) Case No.: 1:08CV00070HEA |
| Defendants. | ) |

PLAINTIFF'S TRIAL BRIEF

Plaintiff's Complaint alleges five causes of action and asks the Court for injunctive relief and monetary damages. The causes of action alleged are:

1. Defendants violated Plaintiff's statutory rights under the United States Housing Act of 1937, 42 U.S.C. § 1437(d)(l)(3) in violation of 42 U.S.C. § 1983 by

    a)  failing to utilize a lease that guarantees alternative housing to Plaintiff,

    b)  by impermissibly restricting Plaintiff's right to alternative housing, and

    c)  by refusing to provide Plaintiff with alternative housing.

2. Defendants violated Plaintiff's statutory rights under the United States Housing Act of 1937, 42 U.S.C. § 1437(d)(l)(2), by including an unreasonable term and condition in Plaintiff's lease that contradicts 24 C.F.R. 966.4(h).

3. Defendants violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution and the United States Housing Act of 1937, 28 U.S.C. Sec. 1437d(k) and its

1

implementing regulations in violation of 42 U.S.C. § 1983 by

   a) deciding not to provide Plaintiff with alternative housing without giving Plaintiff required notice and without opportunity for a hearing and decision by an independent hearing officer considering all of the relevant circumstances in her case, and

   b) deciding not to make reasonable accommodations requested by Plaintiff that would allow Plaintiff to have an equal opportunity to live in her public housing unit without giving Plaintiff required notice and without opportunity for a hearing and decision by an independent hearing officer considering all of the relevant circumstances in her case.

4. Defendants violated Plaintiff's statutory rights under the Fair Housing Act by failing to make reasonable accommodations to their rules, policies and practices that would allow Plaintiff to have an equal opportunity to live in her public housing unit.

5. Defendants violated the parties' lease agreement in that:

   a) Defendants failed to provide Plaintiff with alternative housing as required by Section XI of the lease, 42 U.S.C. § 1437(d)(1)(3) and 24 C.F.R. 966.4(h).

   b) Defendants locked Plaintiff out of her residence on April 18, 2008 and wrongfully evicted her without good cause as prohibited by Section XV of the lease. 42 U.S.C. § 1437(d)(1)(5)

   c) Defendants failed to give notice to Plaintiff of adverse actions by Defendants in violation of Section VIII(H) of the lease.

   d) Defendants have failed to make reasonable accommodations to their rules, policies and practices that would allow Plaintiff to have an equal opportunity to live in her public housing unit in violation of Section IX of the lease.

I.  FACTS

On the morning of April 15, 2008, while cooking her breakfast Plaintiff suffered an episode of syncope and became unconscious.  According to Plaintiff's doctor, Plaintiff suffered an adverse reaction to her medication, which caused her to pass out.  While Plaintiff was unconscious her breakfast caught fire on the stove and caused a fire in Plaintiff's kitchen. The fire caused substantial damage to Plaintiff's residence located at 42 East Haven, Caruthersville, Missouri, so that the residence was not habitable.

Plaintiff met with Defendant Hightower on April 18, 2008, and requested alternative housing due to the fire damage to her residence.  Defendant Hightower refused to provide alternative housing unless Plaintiff singed an agreement to pay for all of the fire damage.  Defendant stated that she told Plaintiff that cost of repair might exceed $30,000.00.  Plaintiff refused to sign such an agreement.  That same day (April 18, 2008) Defendant Hightower ordered a maintenance worker to change the locks on Plaintiff's apartment.

On May 1, 2008, Plaintiff's attorney sent  a letter to Defendant requesting that Plaintiff be provided alternate housing.  On May 1, 2008, Defendant sent a letter to Plaintiff requiring her to remove her personal belongings from the fire damaged apartment by May 18, 2008.  On May 2, 2008, Plaintiff' counsel faxed another letter to Defendant Hightower requesting alternative housing for Plaintiff.

On May 5, 2008, Plaintiff's counsel faxed a letter to Defendant Hightower requesting an immediate grievance hearing to discuss Defendants' refusal to provide alternative housing. No grievance hearing to discuss alternative housing for Plaintiff was ever held.  Defendants sent no other notices or correspondence relating to the fire or alternative housing  to Plaintiff after May 5, 2008.

**II.  Plaintiff's First and Second Causes of Action**

Defendants violated Plaintiff's statutory rights under the United States Housing Act of 1937, 42 U.S.C.  §  1437(d)(l)(3),  42 U.S.C.  §  1437(d)(l)(2) and 24 C.F.R. 966.4(h) by failing to utilize a lease that guarantees alternative housing to Plaintiff, by impermissibly restricting Plaintiff's right to alternative

3

housing, and by refusing to provide Plaintiff with alternative housing. Defendants also violated the lease agreement (Exhibit 1) by refusing to provide alternative housing to Plaintiff.

**A.  Federal regulations require Defendants to provide alternative housing whenever a tenant's home is rendered uninhabitable, regardless of the cause of the damage.**

The United States Housing Act mandates that Defendant CHA and other public housing agencies shall utilize leases that obligate the agency to maintain the project in a decent, safe, and sanitary condition. 42 U.S.C. § 1437d(l)(3).   The Department of Housing and Urban Development ("HUD") has promulgated regulations to promote and implement tenants' rights.  One such regulation requires that the lease between the PHA and the tenant "shall set forth the rights and obligations of the tenant and the PHA"  in the event that the premises are damaged so as to create conditions hazardous to life, health, or safety of the occupants and "shall provide that:

> . . .(2) The PHA shall be responsible for repair of the unit within a reasonable time: Provided, that if the damage was caused by the tenant, tenant's household or guests, the reasonable cost of repairs shall be charged to the tenant;
>
> (3) The PHA shall offer standard alternative accommodations, if available, where necessary repairs cannot be made within a reasonable time; and
>
> (4) Provisions shall be made for abatement of rent in proportion to the seriousness of the damage and loss in value as a dwelling if repairs are not made in accordance with paragraph (h)(2) of this section or alternative accommodations not provided in accordance with paragraph (h)(3) of this section, except that no abatement of rent shall occur if the tenant rejects the alternative accommodation or if the damage was caused by the tenant, tenant's household or guests." 24 C.F.R. 966.4

This regulation does not vest the Housing Authority with discretion to deny alternative housing to a tenant whose home is destroyed by fire.  The mandatory nature of the language "shall provide that" reflects clear

intent that public housing agency leases contain that clause. The regulation's mandatory language "shall offer standard alternative accommodations" does not allow Defendants to deny alternative housing based upon the cause of the fire.

Defendant's offer to provide Plaintiff with alternative housing if Plaintiff were to sign a document agreeing to pay all repair costs also violates 24 C.F.R. 966.4.  Leaving aside the fact that Defendants did not know the amount of the repair costs when this offer was made, the regulation simply does not provide for such a procedure.  There is no logical reason for such a procedure since section XI(A) of the lease already provides that cost of repair can be charged to the tenant if the tenant "caused" the damage.

**B. Defendants cannot circumvent the Federal regulation by use of a lease provision which restricts  a tenant's right to  alternative housing.**

The lease  includes a provision which states "The HA is not required to offer Tenant a replacement unit if the hazardous condition was caused by Tenant, household members, or guest." (Exhibit 1, page f) This lease provision is invalid and unenforceable because it conflicts with the HUD regulation which states: "The PHA shall offer standard alternative accommodations, if available, where necessary repairs cannot be made within a reasonable time." 24 C.F.R. 966.4(h)(3).  Validly promulgated regulations have the force and effect of law and government agencies must follow their own published regulations.  <u>Griffin v. Harris</u>, 571 F.2d 767 (3rd Cir. 1978). Failure to follow such regulations and guidelines is generally an indication of arbitrary and capricious action." <u>Glendale Neighborhood Ass'n v. Greensboro Hous. Auth</u>., 901 F. Supp. 996 (M.D.N.C. 1995).   42 U.S.C. § 1437d(l)(2) states that a public housing agency "shall utilize leases which--(2) do not contain unreasonable terms and conditions."  Adding a provision to a lease which contradicts a regulation is certainly unreasonable.

The mandatory nature of the language "shall provide that" reflects a clear intent that public housing agency leases contain that clause or be read as if the clause had been inserted in the lease. (See, e.g., <u>Noble v. Bethlehem Housing Authority</u>, 617 F. Supp. 248 (ED Pa 1985), holding that federally mandated notice or

grievance procedures must be followed even when the lease does not contain those provisions.) The Court should grant judgment in Plaintiff's favor on her First and Second Cause of Action.

### C. Defendants violated the lease by refusing to provide alternative housing to Plaintiff.

The lease includes a provision which states "The HA is not required to offer Tenant a replacement unit if the hazardous condition was caused by Tenant, household members, or guest." (Exhibit 1, page f) Defendants have interpreted the lease provision to mean that alternative housing will be provided unless there is tenant fault or neglect. Even if this lease provision was valid, alternative housing should have been provided Plaintiff because she did not "cause" the hazardous condition. The parties have stipulated that Plaintiff passed out while cooking her breakfast on April 15, 2008, and that the fire occurred while she was unconscious. Plaintiff's treating physician determined that the syncopal episode was a side effect of Plaintiff's medication. An unconscious person can be held to have "caused the hazardous condition" under these circumstances.

The mere occurrence of a fire does not raise a presumption of negligence or a presumption as to the cause of the fire. _Sparks v. Platte-Clay Elec. Co-op., Inc._, 861 S.W.2d 604, 606 (Mo. App. W.D. 1993). There is no precedent for holding Plaintiff to be negligent under these circumstances. In _Kuhlmann v. Rowald_, 549 S.W.2d 583 (Mo. App., 1977) a 12-year-old Plaintiff, was struck by defendant's car. The defendant argued that the Plaintiff was contributorily negligent by having moved onto the roadway. The court disagreed and found plaintiff's "movement" into the path of defendant's oncoming car was not an act of her own volition. To the contrary, she came into the position of danger either by the involuntary act of slipping and falling, or by being pushed there by one of her companions. According to the court, neither was a voluntary act and so it followed there was no evidentiary support for defendant's contributory negligence instruction. The court favorably cited 65 C.J.S., Negligence, § 3(b) which states: ". . . to create liability for an act alleged to be negligent, it must be shown to have been the act of a person's volition. . . ."

A similar decision was reached in _Ballew v. Aiello_, 422 S.W.2d 396 (Mo. App., 1967) which

involved an automobile collision.  The driver drove partially off the road way and his passenger Gilmore, who was asleep in the front seat,'kind of woke up (and) saw . . . a rock about 12 or 15 inches big' on the shoulder. Immediately ('just that quick' and before Mrs. Aiello could say 'don't') defendant Gilmore reached to his left, 'grabbed hold' of the steering wheel with both hands, 'gave it one big jerk to the left,' and thereby sharply turned the Aiello automobile onto the pavement  and causing a collision with another vehicle.  Gilmore argued he was not liable for negligence because, in grabbing and jerking the steering wheel, he reacted instinctively and instantaneously to the situation confronting him when roused from sleep and his action was involuntary and not volitional.  The appellate court agreed stating "Fundamentally to create liability for an act alleged to be negligent, it must be shown to have been the conscious act of a person's volition. He must have done that which he ought not to have done, or omitted that which he ought to have done, as a conscious being endowed with a will." The court defined volition to be "the act or power of willing or choosing" and as the "act of willing or choosing; act of deciding, as on a course of action or an end to be striven for; exercise of the will." *Id.*at 399.

Plaintiff had been taking blood pressure medications for over 20 years prior to the fire.  In the 20 years period prior to the fire, Plaintiff fainted on only one occasion.   Plaintiff's  medical records will show that on August 1, 2007, Plaintiff was walking in her home when she fell and passed out.  She was taken by ambulance to the emergency room where she was diagnosed with syncope.   No injury to persons or property resulted from this syncopal episode.

Plaintiff's evidence will be that on the morning of April 15, 2008, she took her medications in the prescribed dosages.  This included one new blood pressure medication which her doctor prescribed for her the day before the fire.  She started cooking and the next thing she remembered was waking up after being pulled from her burning home.

Defendants will argue that Plaintiff's syncopal episode was the result of an opiate overdose and not a reaction to her blood pressure medication.  This argument is based on a note in the emergency room

7

report made by Dr. Lopansri Somsak.  There is no question that Plaintiff took medication that was opiate based on the morning of the fire.  Plaintiff has been prescribed pain medication for her back and legs for years.  The pain medication she was prescribe on April 15, 2008, was Hydrocodone, which is the most frequently prescribed opiate in the United States.  <u>Wall v. Astrue</u>, 06-1029 (10th Cir. 3-3-2009)  Plaintiff's treating physician, Dr. Arshad, has never made a diagnosis of Plaintiff overdosing or abusing her pain medication. A treating physician's opinion is generally entitled to more weight than is the opinion of a consultative physician.  <u>Owen v. Astrue</u>, 551 F.3d 792 (8th Cir. 2008).  Dr. Arshad believes the syncopal episode resulted from a reaction to Plaintiff's blood pressure medication.

     Plaintiff has been prescribe medications for high blood pressure since 1987.  Since that time she has cooked thousands of meals without incident.  Plaintiff was not negligent simply because she started cooking breakfast on April 15, 2008. Plaintiff did not "cause" the fire and Defendant's refusal to provide alternative housing to Plaintiff violated the lease agreement.

**III. Defendants deprived Plaintiff of her property without due process in violation of the Fourteenth Amendment.**

     The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const., Amend. XIV, § 1. Essentially, due process requires that a person be given notice and an opportunity to be heard prior to an adverse action. <u>Goldberg v. Kelly</u>, 397 U.S. 254, 267-68 (1970).

     A violation of the  Fourteenth Amendment is established by showing  (1) state action, (2) denying a protectible property interest (3) without due process.  <u>Joy v. Daniels</u>, 479 F.2d 1236, 1238-40 (4th Cir. 1973).  Local housing authorities are state actors for purposes of Fourteenth Amendment liability . <u>Burr v. New Rochelle Municipal Housing Authority</u>, 479 F.2d 1165, 1167 (2d Cir. 1973).  Participation in a public housing program is a property interest protected by due process.  <u>Davis v Mansfield Metropolitan Housing Authority</u>, 751 F.2d 180, 184 (6th Cir. 1984).

**A.  Defendants failed to provide required notice of adverse action and required notice of right to a grievance hearing.**

Section VIII(H) of the lease (Exhibit 1, page d) as well as 24 C.F.R. 966.4(e)(8) require Defendants:

"To notify Tenant of the specific grounds for any proposed adverse action by PHA. (Such adverse action includes, but is not limited to: a proposed lease termination, transfer of Tenant to another unit, change in amount of rent, or imposition of charges for maintenance and repair, or for excess consumption of utilities.) When PHA is required to afford Tenant the opportunity for a hearing under the PHA grievance procedure for a grievance concerning a proposed adverse action:

(1) The Notice of the proposed adverse action shall inform Tenant of the right to request such hearing. In the case of lease termination, a notice of lease termination shall constitute adequate notice of proposed adverse action.

(2) In the case of a proposed adverse action other than a proposed lease termination, PHA shall not take the proposed action until time to request such a hearing has expired or (if hearing was timely requested) the grievance process has been completed." 24 C.F.R. 966.4(e)(8)

Section XIV(B) of the lease requires all such notices to be in writing.

On April 18, 2008, Defendants took adverse action against Plaintiff by (1) refusing to provide her alternate housing and (2) ordering the locks on her apartment to be changed.  The only notice Plaintiff received regarding these actions were two letters (Exhibits 8 and 11). Exhibit 8 was mailed to Plaintiff twelve days after the adverse actions took place and Exhibit 11 seventeen days after the adverse actions took place.  These letters do not state any specific grounds for denying Plaintiff alternative housing or for locking Plaintiff out of her apartment.   There is also no mention of Plaintiff's right to request a grievance hearing. The essential requirements of due process are notice and an opportunity to respond. Coleman v. Reed, 147 F.3d 751, 754 (8th Cir. 1998).

9

Defendants simply ignored the notice requirements of 24 C.F.R. 966.4(e)(8). They failed to give notice to Plaintiff of the specific grounds for the adverse actions taken against her. They failed to notify Plaintiff of her right to contest the adverse actions through the mandated grievance procedure. There is no question that Plaintiff's due process rights have been violated.

**B. Defendants failed to provide Plaintiff with a grievance hearing in violation of 42 U.S.C. Sec. 1437d(k).**

Plaintiff requested a grievance hearing by letter dated May 5, 2008, (Exhibit 11). The Housing Act provides:

" The Secretary shall by regulation require each public housing agency receiving assistance under this Act to establish and implement an administrative grievance procedure under which tenants will--

(1) be advised of the specific grounds of any proposed adverse public housing agency action;

(2) have an opportunity for a hearing before an impartial party upon timely request within any period applicable under subsection (l);

(3) have an opportunity to examine any documents or records or regulations related to the proposed action;

(4) be entitled to be represented by another person of their choice at any hearing;

(5) be entitled to ask questions of witnesses and have others make statements on their behalf; and

(6) be entitled to receive a written decision by the public housing agency on the proposed action."  42 U.S.C. Sec. 1437d(k).

The regulations require each Housing Authority to establish a grievance procedure which applies "to all individual grievances ... between the tenant and the PHA." 24 C.F.R. Secs. 966.51(1)(a)(1),

966.52(a). The regulations define a "grievance" as any dispute which a tenant may have with respect to PHA action or failure to act which adversely affect the individual tenant's rights, duties, welfare or status. 24 C.F.R. Sec. 966.53(a)

Defendants simply ignored the notice requirements of 24 C.F.R. 966.4(e)(8) and the grievance procedures established by 42 U.S.C. Sec. 1437d(k). They failed to delay taking adverse action until a hearing before an impartial party could be held.  Plaintiff's  written request for a grievance hearing was ignored by Defendants.    The Court should grant judgment in Plaintiff's favor on her Third Cause of Action.

**IV.  Plaintiff's Fourth Cause of Action**

Section IX of the lease (Exhibit 1, page d) provides in part:  "The HA will make reasonable accommodations in the Lease and other policy requirements when requested by a qualified Tenant with disabilities." On May 21, 2008, Plaintiff's counsel mailed Defendant's counsel a letter (Exhibit 13) requesting reasonable accommodations be made for Plaintiff as a result of her disabilities.  The letter specifically asked Defendants not to deny Plaintiff alternate housing or attempt to hold Plaintiff liable for damages caused by accident resulting from Plaintiff's disability.   Defendants have never responded to that letter.

The Fair Housing Act makes it unlawful to discriminate against any person  in the provision of services or facilities in connection with his dwelling, because of a handicap of that person. 42 U.S.C. § 3604(f)(2). Discrimination includes a refusal to make reasonable accommodations in rules, policies, practices, or services,when such accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling.  42 U.S.C. § 3604(f)(3)(B); 24 C.F.R. § 100.204.

To prevail on a claim under 42 U.S.C. § 3604(f)(3), a plaintiff must prove all of the following elements: (1) that the plaintiff is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the

11

defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation. Dubois v. Ass'n Apart. Owners, 453 F.3d 1175, 1179 (9th Cir. 2006).

Whether a requested accommodation is required by law is "highly fact-specific, requiring case-by-case determination." United States v. California Mobile Home Park Mgmt. Co., 29 F.3d 1413, 1418 (9th Cir. 1994). Courts generally balance the burdens imposed on the defendant by the contemplated accommodation against the benefits to the plaintiff. Smith & Lee Assocs., Inc. v. City of Taylor, 102 F.3d 781, 795 (6th Cir. 1996). In determining whether the reasonableness requirement has been met, a court may consider the accommodation's functional and administrative aspects, as well as its costs. Groner v. Golden Gate Apartments, 250 F.3d 1039, 1044 (6th Cir. 2001).

Plaintiff is handicapped within the meaning of the Fair Housing Act. Her medical records clearly establish she has "a physical or mental impairment which substantially limits one or more of such person's major life activities." 42 U.S.C. § 3602(h). Staff of CHA were aware that Plaintiff frequently needed medical attention from paramedics and were therefore aware of Plaintiff's disabilities. The accommodation requested (not denying alternative housing and not assessing repair costs to Plaintiff) are reasonable and necessary to afford her an equal opportunity to use and enjoy her dwelling. The cost of making the requested accommodation is at most $1000.00 (the amount CHA paid for repairs to Plaintiff's dwelling). Agreeing to the accommodations would not create a great burden on Defendants and would greatly benefit Plaintiff. The Court should grant judgment in Plaintiff's favor on her Fourth Cause of Action.

**V. Plaintiff's Fifth Cause of Action**

Plaintiff's fifth cause of action is for breach of contract. Defendants breached the lease agreement by:

1. Failing to provide alternative housing to Plaintiff as required by Section XI of the lease.

2. Locking Plaintiff out of her apartement and wrongfully evicting her without good cause in vioaltion of Section XV of the lease.

3. Failing to proper notice of adverse actions taken against Plaintiff in violation of section VIII(H) of the lease.

4. Failing to make reasonable accommodations to Defendants' rules, policies and practices in violation of Section IX of the lease.

Defendants' liability for breach of contract is based on the same reasoning and legal authority as the statutory violations outlined above.

## VI.  Relief Requested

### A. Injunctive relief.

Plaintiff asks the Court to find that Defendants violated her statutory and contractual rights as stated above. Plaintiff requests the Court to enter a order enjoining Defendants from:

(1) denying Plaintiff alternative housing;

(2) charging Plaintiff with costs of repair of her fire damaged dwelling;

(3) taking any other adverse action against Plaintiff without first giving Plaintiff notice and opportunity for hearing in accordance with the lease provision and regulations.

### B. Monetary damages.

In addition to her court costs, Plaintiff should be awarded monetary damages as a result of Defendant's conduct.  Plaintiff's evidence will be that she incurred expenses as a result of being locked out of  her home and not being provided alternative housing by Defendants.  Plaintiff will testify that many items of personal property were ruined because of mildew and other water damage and that those items would not have been ruined if she had been provide alternative housing or not been locked out of her apartment on April 18, 2008.  Due to the lock-out and the denial of alternative housing, Plaintiff  was unable to move her personal belongs out of the fire damaged dwelling.  Plaintiff had no where to move her

13

furniture, bedding and belongs so that they could dry out.  Defendants should be ordered to compensate Plaintiff for her ruined belongs which Plaintiff valued at $3,000.00.

From April 15, 2008, until May 14, 2008, Plaintiff  stayed in her car or with friends who would give her a place to sleep.    Plaintiff's nephew and granddaughter had to stay of Plaintiff's daughter, Angela Sims during for that time period.  Angela Sims  lives in a two bedroom CHA apartment with her two children.  Plaintiff paid $60.00 to one person who let her stay at his home for two nights.  Otherwise, she was dependent on the charity of others.  Defendants should be ordered to reimburse Plaintiff for her out of pocket expenses incurred as a result of the denial of housing.

Defendants should also be ordered to pay damages for their vioaltion of the Fair Housing Act and vioaltion of Plaintiff's due process rights.    Defendant's failed to even respond to Plaintiff's request for reasonable accommodations and completely ignored Plaintiff's right to notice and a hearing before adverse actions were taken against her.  This shows a reckless or callous indifference to Plaintiff's federally protected rights.

## VII.  Procedural Issues

There are some procedural problems caused by the failure of the Defendants to issue notices of adverse action as required by the lease and 24 C.F.R. 966.4(e)(8).  Those procedural problems include:

**A.  Plaintiff's lease on 42 East Haven has never been terminated.**

The lease and the federal regulations are very specific.  Lease sections XV (B) and (C) state that Defendants "shall give written notice of the proposed termination of the lease" and that notice must state the specific reasons for the termination as well as notify Plaintiff of her opportunity for a grievance hearing. (Exhibit 1, page h)  No such notice has ever been sent to Plaintiff.

**B.  Defendants have taken no action with regard to charging any cost of repair to Plaintiff for any damage that occurred to 42 East Haven.**

Lease section VIII (H)  requires Defendants to give Plaintiff notice of any proposed adverse

actions and lease section XIV(B) requires that notice to be in writing.  The lease specifically refers to imposition of charges for repairs as an adverse action.  (Exhibit 1, page d) To date no notice of imposition of charges for repairs has been received by Plaintiff.  This is particularly troublesome since Defendants may decide to impose the amount of the insurance deductible as opposed to the entire repair cost.  It may need to be determined whether Plaintiff should be deemed  a co-insured under Defendants insurance policy so that only the insurance deductible could be charged.

      \s\ Lew Polivick
      Lew Polivick  ED# 4073
      116 N. Main, P.O. Box 349
      Charleston, MO 63834
      Phone:  (573) 683-3783
      Fax: (573) 683-2151
      Lew@LSOSM.Org
      Attorney for the Plaintiff