UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| EVONNE VALLIANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:08CV70 SNLJ |
| | ) | |
| CARUTHERSVILLE HOUSING | ) | |
| AUTHORITY, et al., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before this Court following a bench trial held on May 18, 2009. The Court took the case under advisement and now issues its final judgment.

**Findings of Fact and Conclusions of Law**

This case involves a dispute concerning plaintiff's right to receive alternative housing from the Caruthersville Housing Authority after her apartment became uninhabitable due to a fire. Plaintiff is a 54-year-old woman who resides at 44 East Haven, Caruthersville, Missouri, which is a public housing unit owned by defendant Caruthersville Housing Authority (CHA). Defendant Elizabeth Hightower is the Executive Director of CHA and is responsible for the operation and administration of all developments and programs of CHA, including ensuring CHA's compliance with federal laws governing public housing authorities.

On May 15, 2001, plaintiff entered into a lease agreement with defendant CHA for a residence located at 63 East Haven. On March 24, 2006, plaintiff moved to another CHA unit located at 42 East Haven. Also listed on the lease were plaintiff's eight year-old nephew and her thirteen year-old granddaughter.

On the morning of April 15, 2008, while preparing to cook breakfast, plaintiff turned on her stove and then lost consciousness. Plaintiff was unable to recall the events immediately before or immediately following her loss of consciousness. While plaintiff was unconscious, her apartment caught fire from the unattended stove. Plaintiff's nephew discovered plaintiff laying on the floor and ran to a neighbor's house for help. The neighbors were able to pull plaintiff out of the apartment. Plaintiff was then transported by ambulance to Pemiscot Memorial Hospital for treatment.

At the hospital plaintiff was initially seen in the Emergency Room by Doctor Somsak who diagnosed plaintiff with an opiate overdose and dehydration. Later that day, plaintiff was seen by her treating physician, Doctor Arshad, who diagnosed the "syncopal episode" as a side effect of plaintiff's medication. Dr. Arshad was aware that plaintiff had a history of failing to regularly take her medication. Dr. Arshad's notes indicated that the episode resulted when plaintiff "finally took all of her blood pressure medications and pain medicines at the same time." Dr. Arshad had added Maxzide (triamterene hydrochlorothiazide), a blood pressure medication, to plaintiff's regimen on April 14, 2008, the day before the fire. Plaintiff had previously been taken off Maxzide because she complained that it caused her dizziness. At the time of the fire, plaintiff was on four medications for high blood pressure: Lotrel, Coreg, and Maxzide which is a combination of two medications, an opiate for plaintiff's back and knee pain, as well as a number of other prescriptions. Plaintiff had taken the opiate the night before the fire and all of her blood pressure medications the morning of the fire.

The April 15, 2008, fire caused substantial damage to plaintiff's residence, 42 East Haven, and rendered it uninhabitable. The Caruthersville Fire Department found that the fire started on plaintiff's cook stove. The report of the Caruthersville Police Department indicates that the

2

Case: 1:08-cv-00070-SNLJ   Doc. #:  57   Filed: 06/02/09   Page: 3 of 9 PageID #: 331


apartment caught fire after plaintiff suffered a medical problem and passed out while she was beginning to prepare breakfast.

Defendants were notified of the damage to the property on April 15, 2008, by a maintenance worker employed by CHA. On April 16, 2008, after being released from the hospital, plaintiff went to the office of CHA and requested she be provided alternative housing due to the fire damage to her residence. Plaintiff was told by CHA staff that she was required to talk to defendant Hightower, who was absent that day. Plaintiff was readmitted to the hospital on April 17, 2008, where she spent the night and was diagnosed with altered mental status, hypertension, hyperlipidemia, gastritis, and anxiety. After being released on April 18, 2008, plaintiff returned to the office of CHA and talked with defendant Hightower about alternative housing. Defendant Hightower told plaintiff that she would not be given alternative housing unless plaintiff signed an agreement stating she would pay for all damages caused by the fire. Defendant Hightower did not give plaintiff an exact amount she would be required to pay, but did state that a recent fire at a nearby housing unit had caused over $30,000 in damage.

It is CHA's policy, as well as a requirement in the lease signed by plaintiff, that alternative housing would be offered to a tenant if the damage to the house was not caused by tenant's fault or neglect. Defendant Hightower testified that based upon the reports of the fire from the Caruthersville Fire Department and Caruthersville Police Department, she believed that the fire had been caused by plaintiff. On April 18, 2008, Defendant Hightower ordered CHA maintenance personnel to change the locks on plaintiff's unit.

From April 18, 2008, until May 14, 2008, plaintiff stayed with friends or slept in her car. Plaintiff's daughter, Angela Sims, who lived in the same complex, contacted Ms. Hightower prior to the locks being changed to see if her mother could stay with her. Ms. Hightower told Ms. Sims

3

that her mother could stay for up to two weeks.  However, plaintiff chose not to stay with her daughter.   Yet, plaintiff's nephew and granddaughter stayed with Ms. Sims during this time period.

On May 1, 2008, plaintiff's attorney faxed a letter to defendant Hightower requesting that plaintiff be provided with a public housing unit comparable to the one damaged in the fire.  That same day, May 1, 2008, defendant Hightower wrote plaintiff advising her to remove her belongings from the residence at 42 East Haven before May 15, 2008.  The letter further stated that any of plaintiff's belongings still in the residence after that date would be disposed of by CHA, and that plaintiff would need to come into CHA's office and let the maintenance department know when she wanted to remove her belongings.  On May 2, 2008, plaintiff's attorney faxed a letter to defendant Hightower again requesting alternative housing for plaintiff.  By letter dated May 5, 2008, defendant's attorney notified plaintiff that CHA was refusing to offer plaintiff alternative housing.  Also on May 5, 2008, plaintiff's attorney faxed a letter to defendant Hightower requesting an immediate grievance hearing on behalf of plaintiff, and that same day defendant Hightower faxed a reply to plaintiff's attorney stating a Notice of Refusal to house plaintiff had been issued by defendants' attorney.  This suit was filed on May 14, 2008, and a Temporary Restraining Order was entered requiring CHA to provide housing to Plaintiff.

Plaintiff was given a key to her fire-damaged apartment from May 14, 2008, until June 1, 2008, so she could removed her belongings.  On May 27, 2008, the parties filed a stipulation under which CHA has continued to provide housing to Plaintiff.  Repair work was completed on plaintiff's former residence in December, 2008, and the cost of repairs was $31,958.  CHA paid $1,000 of the repair cost and the remainder was paid by the Missouri Housing Authority Property and Casualty Insurance Company, Inc.

4

The parties agree that the lease must comply with the United States Housing Act of 1937, 42 U.S.C. § 1437(d)(1)(3) and the federal regulations found in 24 C.F.R. § 966.  Defendants argue that under 24 C.F.R. § 966.4(h), there is no responsibility to provide alternative housing to a tenant who caused the damage to their unit that renders it uninhabitable.  Plaintiff, in turn, argues that § 966.4(h) does mandate alternative housing to tenants who caused the damage, and even if defendants' interpretation is correct, plaintiff did not cause the damage to her unit.

24 C.F.R. § 966(h) provides the following:

> (h) Defects hazardous to life, health, or safety.  The lease set forth the rights and obligations of the tenant and the PHA if the dwelling unit is damaged to the extent that conditions are created which are hazardous to life, health, or safety of the occupants and shall provide that:
>
> > (1) The tenant shall immediately notify project management of the damage;
> >
> > (2) The PHA shall be responsible for repair of the unit within a reasonable time; Provided, That if the damage was caused by the tenant, tenant's household or guests, the reasonable cost of the repairs shall be charged to the tenant;
> >
> > (3) The PHA shall offer standard alternative accommodations, if available, where necessary repairs cannot be made within a reasonable time; and
> >
> > (4) Provisions shall be made for abatement of rent in proportion to the seriousness of the damage and loss in value as a dwelling if repairs are not made in accordance with paragraph (h)(2) of this section or alternative accommodations not provided in accordance with paragraph (h)(3) of this section, except that no abatement of rent shall occur if the tenant rejects the alternative accommodation or if the damage was caused by the tenant, tenant's household or guests.

Specifically, plaintiff contends that she was not the cause of the stove fire because it started after she lost consciousness due to her medication.  In opposition, defendant presented two alternative arguments at trial.  First, defendant argued that the ER physician that examined

5

plaintiff on the day of the fire diagnosed her with an opiate overdose, that plaintiff was abusing her medication, and that despite being unconscious during the fire, she in fact caused the fire by her own negligence.  Second, defendant attempted to establish that operating her stove before she was aware how her new blood pressure medication would affect her was negligent, and for that reason she should be found to be the cause of the fire.

   This Court finds that, based on the testimony of Dr. Arshad, that plaintiff was not abusing her opiate medication.  Dr. Arshad testified that the test administered in the Emergency Room only gives a positive or negative response for the presence of an opiate and does not indicate an overdose.  Dr. Arshad testified that he had prescribed an opiate to plaintiff and, that even if she was taking it as prescribed, the test would return positive.  Further, Dr. Arshad testified that after conducting his own examination of the plaintiff later that same day, he determined that her loss of consciousness was due to her blood pressure medication.  The Emergency Room doctor Dr. Somsak did not testify.  Taking into account Dr. Arshard's familiarity with the plaintiff's medical history, this Court finds his testimony regarding the cause of plaintiffs loss of consciousness convincing.

   Defendants also attempted to establish at trial that even if she was not abusing her medications, plaintiff's use of a stove while taking the new blood pressure medication was negligent.  Dr. Arshad testified that although Maxzide came with warnings to not drive a vehicle or operate heavy machinery until plaintiff was aware of how the medication would affect her, there was no warning that she should not operate a stove.  This Court finds that a reasonable person would not infer from a warning that the should not operate a vehicle that they should also not operate a stove.

6

This Court observes that plaintiff's medical history does have a notation that plaintiff had previously taken Maxzide and complained that it caused her to become dizzy.  Despite this, there is no evidence to suggest that plaintiff was aware that the medication would cause her to lose consciousness.  His behavior does not establish an abuse of medication such that would establish that plaintiff was acting negligently.   In short, defendants have failed to establish that plaintiff knew that she was taking a risk by operating the stove after taking all of her medications as prescribed and disregarded that risk.

Ultimately, the fact that plaintiff was unconscious when the fire started was not due to any negligence on her part, so she cannot be said to be the cause of the fire.  Because plaintiff was not the cause of the fire, this Court need not consider whether under 24 C.F.R. § 966.4(h) CHA was entitled to deny plaintiff alternative housing until she agreed to pay for the damages she allegedly caused.

**Relief Requested**

Plaintiff requests both injunctive relief and monetary damages.  In finding that defendants violated her statutory and contractual rights, plaintiff requests this Court to enter an order enjoining defendants from: (1) denying plaintiff alternative housing; (2) charging plaintiff with the costs of repair of her fire damaged dwelling; and (3) taking any other adverse action against plaintiff without first giving plaintiff notice and opportunity for hearing in accordance with the lease provision and regulations.  This Court holds that plaintiff is entitled to alternative housing under the terms of both the lease and federal regulations. As such, defendants are enjoined from denying plaintiff housing because of the fire at 42 East Haven.  In addition, because plaintiff is found not to be the "cause" of the fire, defendant is enjoined from charging plaintiff with the costs of repair of 42 East Haven.  Plaintiff's request for the defendants to be enjoined from taking

7

adverse action against the plaintiff without notice and opportunity for hearing is now moot under the terms of this judgment

Plaintiff also requests this Court to award monetary damages for: (1) court costs; (2) expenses as a result of being locked out of her home and not being provided with alternative housing; (3) damage to personal property as a result of water damage; (4) damages for showing "reckless or callous indifference to plaintiff's federally protected rights." This Court holds that plaintiff is entitled to reasonable court costs associated this case.

This Court further finds that plaintiff presented insufficient evidence at trial to establish the expenses associated with being locked out or the damage to personal property. Plaintiff's testimony regarding her expenses and damage to property was vague and not supported by any records. The stipulated facts are that plaintiff paid a person $60.00 to let her stay at her home for two nights, but that expense was unnecessary because defendant Hightower had given plaintiff's daughter permission to let her mother stay with her at no additional cost and plaintiff chose instead to stay elsewhere. In addition to the lack of documentation as to the value of the property lost, this Court was unconvinced by plaintiff's testimony that the damage was a result of defendants leaving the water running and not a result of the natural water damage associated with extinguishing a fire. Without any credible testimony or evidence establishing the value of the loss or that it was not simply a result of the fire, this Court will not award damages for loss of property.

Finally, this Court holds that plaintiff is not entitled to punitive damages for defendants' failure to provide alternative housing in violation of the lease and Fair Housing Act. The testimony established that, when alternative housing was denied, defendant Hightower had a good faith belief that plaintiff was responsible for the fire. It was CHA's practice to have a tenant that

had damaged an apartment sign a form that they understood that they were responsible for payment before they could receive alternative housing. Although the evidence later demonstrated that plaintiff was not the cause of the fire, there was nothing about defendant's behavior that could be described as reckless or callous indifference to warrant the award of additional damages.

**Conclusion**

This Court holds that under Fair Housing Act, 24 C.F.R. § 966, and the terms of plaintiff's lease, CHA was required to provide alternative housing to plaintiff following the fire in her unit. Plaintiff is entitled to receive alternative housing and defendants are enjoined from denying her housing based on the fire in her unit. Defendants are also to be enjoined from charging plaintiff for the cost of the fire. However, this Court will not award to plaintiff the additional damages requested.

Accordingly,

**IT IS HEREBY ORDERED** that defendants are enjoined from denying plaintiff alternative housing on the basis of the fire at 42 East Haven.

**IT IS FURTHER ORDERED** that defendants are enjoined from charging plaintiff with the cost of repairs associated with the fire at 42 East Haven.

**IT IS FURTHER ORDERED** that defendants pay for plaintiff's reasonable court costs associated with this case.

Dated this ___2nd___ day of June, 2009.

_____
UNITED STATES DISTRICT JUDGE